SUTTON, Circuit Judge.
Richard Lipan filed a lawsuit in the United States Bankruptcy Court seeking a determination that the debt owed to him by Kenn Kriegish was not dischargeable in Kriegish’s bankruptcy proceeding. Reasoning that Kriegish had committed a defalcation while acting as a fiduciary under 11 U.S.C. § 523(a)(4), the bankruptcy judge held that $57,534.90 of the debt was non-dischargeable. On review under 28 U.S.C. § 158(a)(1), the district court agreed, and we affirm.
Richard Lipan, the owner of Majestic Construction, was the general contractor on the Fostrian Manor Construction project. Lipan in turn subcontracted with Kenn’s Sheet Metal (“Kenn’s”) to provide heating, ventilation and air conditioning work on the project for a total contract *5 price of $284,083. Kenn’s never completed the contract, however, and Lipan sued Kenn’s for losses related to the unfinished work. In the aftermath of an arbitration hearing regarding their dispute, the parties entered into a $141,074.47 consent judgment in Lipan’s favor stemming from Kenn’s failure to complete the contract and pay its suppliers. Not long thereafter, on April 28, 2000, Kenn Kriegish, the sole owner of Kenn’s Sheet Metal, filed a voluntary petition under Chapter 7 for bankruptcy protection.
Lipan filed a complaint in Kriegish’s bankruptcy, claiming that the consent-decree debt could not be discharged under 11 U.S.C. § 523(a)(4) because Kriegish had committed a “fraud or defalcation” while acting as a fiduciary of the funds advanced by Lipan to Kenn’s Sheet Metal. In Li-pan’s view, the Michigan Building Contract Fund Act (MBCFA) imposed fiduciary obligations on subcontractors, like Kriegish, who hold construction funds for the benefit of contractors, laborers and suppliers. See Mich. Comp. Laws § 570.151. Because Kriegish had not first paid these beneficiaries out of the subcontract funds advanced to him and instead had spent the funds in other ways, Lipan claimed that Kriegish had violated his fiduciary responsibilities. These violations, Lipan concluded, rendered the consent-decree debt non-dis-chargeable under § 523(a)(4).
The bankruptcy court agreed that at least a portion of the debt should not be discharged because Kriegish had misappropriated money while acting as a trustee of the construction funds. It first accepted Lipan’s allegations that Kriegish had not paid Thermal-Netics, Inc. and Aaon, Inc-two equipment suppliers on the subcontract-out of the $89,991 payment from Lipan to Kenn’s Sheet Metal on May 19, 1998, which had been allocated for that purpose. It then concluded that Lipan was forced to pay additional money ($29,-234.80 to Thermal-Netics and $77,018.30 to Aaon) when the invoices became due— essentially paying twice — because Kriegish had never paid these suppliers out of the funds he was holding in trust for that purpose.
In view of this , misappropriation, the bankruptcy court determined that Kriegish must account for the funds that Lipan had advanced to him on the subcontract— which totaled $182,342.30 at the time the contract was terminated. Kriegish, however, could not produce a ledger to account for all of the funds. After considering the documentation that Kriegish could provide, the bankruptcy court found that $57,534.90 of the consent-decree debt was attributable to Kriegish’s defalcation and could not be discharged. Reviewing for clear error, see In re Isaacman, 26 F.3d 629, 631 (6th Cir.1994), the district court adopted these factual findings of the bankruptcy court, and affirmed its judgment.
After carefully reviewing the record, the applicable law, and the parties’ briefs, and after hearing oral argument, we conclude that the district court’s and bankruptcy court’s opinions correctly state the relevant facts and law. Because the issuance of a full opinion in this setting would add little to the development of the law, we affirm on the basis of the district court’s and bankruptcy court’s opinions — with one modest exception.
Kriegish argues that the evidence before the bankruptcy court did not establish an agreement between the parties that the May 19th check was meant to pay Thermal-Netics and Aaon. True or not, this finding was not essential to the ultimate determination that Kriegish committed a defalcation under 11 U.S.C. § 523(a)(4). In this Circuit, we have broadly defined “defalcation” to encompass embezzlement and misappropriation by a fiduciary, as *6 well as the “failure to properly account for such funds.” In re Interstate Agency, Inc., 760 F.2d 121, 125 (6th Cir.1985) (internal quotations omitted). And we have specifically concluded that the failure to adhere to the MBCFA’s mandate — using building funds to pay only laborers, subcontractors, and suppliers-constitutes a defalcation. See In re Johnson, 691 F.2d 249, 257 (6th Cir.1982). The record here is replete with evidence that Kriegish used the monies advanced by Lipan to pay for his general overhead expenses and to pay suppliers for their work on other projects — clear violations of the MBCFA and accordingly clear defalcations under § 523(a)(4).
For these reasons, we affirm.